51 So.2d 65

ROUSE v. ROUSE et al.

No. 39617.

Feb. 12, 1951.

Philip E. Pfeffer, Dalton J. Barranger, Covington, for plaintiff-appellant.

Prowell & Viosca, New Orleans, for plaintiff-intervenor.

Raymond H. Saal, Covington, for defendants and appellees.

HAMITER, Justice.

John E. Rouse died intestate in 1947, leaving property belonging to his separate estate valued at $23,000 and, additionally, some worth $9,000 which had been acquired during his marriage to Thelma Stroble Rouse, the plaintiff herein. Surviving decedent, besides the alleged widow in community, were a mother and four brothers and sisters, the names of the last mentioned four Sedgie, Lucy, Carlos and Edna.

In that situation, according to our laws relating to intestate successions, such persons seemingly were entitled to the properties of the two estates as follows: Of the separate estate, three-fourths to the brothers and sisters (or a three-sixteenths to each of the four) and one-fourth to the mother; and of the community estate, three-fourths to the widow and one-fourth to the mother. However, following the opening of the succession and the taking of an inventory a dispute arose between Sedgie and Lucy, on the one hand, and the widow, on the other hand, regarding the settlement of the estates, the former contending that the latter was neither the lawful nor putative wife of the decedent and hence not entitled to any of his property, and she insisting that they had no interest in either estate. And this dispute

ripened into a series of law suits (four in number), one of which was an action for damages charging libel brought by the widow.

Eventually, specifically on November 6, 1948, the parties to the dispute signed and executed a notarial act by which they purportedly compromised their differences and settled all of the pending law suits. Under the compromise agreement Lucy and Sedgie transferred and conveyed unto the widow, and she accepted, *"An undivided five-sixteenths (5/16) of vendors' combined interest in and to John E. Rouse's separate estate* which will more fully appear by reference to the inventory made by Dalton J. Barranger, Notary Public, said interests having been acquired by the vendors herein from their deceased brother, John E. Rouse, who departed this life on the 19th day of October, 1947, as evidenced by judgment recorded and signed in the mortuary proceeding No. 1829 of the Docket of the 22nd Judicial District Court in and for the Parish of St. Tammany and recorded in C.O.B. ———, Folio ———." (Italics ours)

Six days later the widow, Thelma Stroble Rouse, instituted the present action against the said Sedgie Rouse and Lucy Rouse (Allgood) to annul the compromise agreement. She prayed for a judgment "annulling, setting aside, and ordering the cancellation of the inscription of, the act of sale from Sedgie S. Rouse and Lucy Rouse Allgood to Thelma S. Rouse, filed for record in the office of the Clerk of Court and Ex-Officio Recorder for St. Tammany Parish on November 12, 1948."

For a cause of action plaintiff alleged:

"That it was distinctly understood that the title to which petitioner affixed her signature of acceptance transferred to her five-sixteenths (5/16) of the entire separate property of John E. Rouse, deceased, and it was with that understanding and under that belief that plaintiff signed said act.

"That by said act the said defendants herein agreed to transfer to petitioner five-sixteenths (5/16) of the entire separate estate of John E. Rouse, deceased, and such was the purpose of said act; and if not, then petitioner signed said deed in error because she was informed and reassured that the defendants herein, by said act, were transferring to petitioner five-sixteenths (5/16) of the decedent's entire separate estate, which was petitioner's principal inducement for signing said act of transfer.

"That in order to put into effect the proposed compromise, it was the understanding of all parties that the above mentioned act of sale was to remain in the custody of the defendants' attorney, and that a petition and judgment of possession were to remain in the custody of plaintiff's attorney, and all documents were to be completed and filed in the office of the Clerk of Court for St. Tammany Parish at one and the same time.

"That petitioner has complete confidence in the rectitude of her counsel, and she did not sign the said act of sale until her counsel assured her that the said Sedgie S. Rouse and Lucy Rouse Allgood, by that instrument, conveyed to her five-sixteenths (5/16) of her deceased husband's entire separate estate.

\*   \*   \*   \*   \*   \*

"That Thelma Stroble Rouse accepted the said act of sale prepared and acknowledged before Raymond Saal, Notary Public, under the belief that she would thereby own five-sixteenths (5/16) of decedent's separate property and Lucy Rouse Allgood and Sedgie S. Rouse would own one-sixteenth (1/16) of the separate property of their deceased brother."

After a trial of the merits the district court rendered a judgment rejecting the demands of plaintiff at her costs. She then obtained orders for and perfected this appeal.

Following the lodging of the transcript here one Lillian Mailhos Rouse made her initial appearance in the cause by filing a petition of intervention. Therein, she alleged that she was married to the late John E. Rouse on April 25, 1933 (this preceded plaintiff's marriage); that she has never been legally divorced from him and therefore plaintiff had no right to enter into the compromise; and that the compromise should be set aside as having been executed under a misapprehension of fact

and without the consent of decedent's legal wife. Intervenor prayed that the judgment appealed from be annulled and set aside, and, in the alternative (if the compromise is maintained), that she be substituted in the judgment and in the agreement in place of the plaintiff. To the filing of the petition of intervention objection has been urged.

It is obvious that the intervention cannot be allowed. To entertain it would be to delay the final determination of the case for an indefinite period of time and also to provide issues not heretofore raised by the original parties. Neither is permissible. For vindicating her rights intervenor has recourse to a separate action. Code of Practice Article 391, Bickham v. Womack, 181 La. 837, 160 So. 431, and Bonnabel v. Police Jury, Parish of Jefferson, 216 La. 798, 44 So.2d 872.

On the merits of the cause we find from the record that after the failure of numerous efforts on the part of all concerned to effect a compromise of the dispute between the litigants (including a settlement of the pending lawsuits), the attorneys for plaintiff prepared and delivered to the attorneys for defendants a written proposal reading as follows:

"Covington, Louisiana, September 4, 1948.

"We submit the following proposal by way of compromise, based upon a valuation of $9000 as community property and $23,000 as separate property:

"Lucy and Sedgie are to deed to Thelma 5/16 of their combined interest in the separate property. This deed will enumerate community property and separate property, particularly describing real estate and war savings bonds, and will be joined in by the mother.

"A judgment will recognize Thelma as the owner of 3/4 of all community property, and the mother as owner of the remaining 1/4 of community property. The judgment will further recognize Carlos, Edna, Lucy and Sedgie as owners of a 3/16 interest, each, in all separate property, and the mother as owner of the remaining 1/4 separate property.

"Debts of the estate are to be paid by community and separate estates.

"We then agree to abandon the damage suit."

This written proposal was discussed with defendants by their counsel; it was agreed to by them; and on September 6, 1948, they, together with their mother, signed a written acceptance appended thereto.

Thereafter, as agreed, counsel for defendants prepared the deed requisite to carry out the compromise and settlement, the language of which with respect to the conveyance followed exactly that contained in the accepted proposal; and it was signed and executed by all of the parties, in the presence of their respective counsel, on November 6, 1948.

On November 12, 1948, plaintiff's counsel informed defense counsel that the language of the submitted proposal and of the subsequently executed deed was not in keeping with the intention of plaintiff; that her understanding was that she would obtain in the settlement five-sixteenths of the decedent's entire separate property, thereby leaving to defendants jointly a one-sixteenth interest; and that she was not to receive, as the instruments recited, only five-sixteenths of the defendants' combined interests (or five-sixteenths of six-sixteenths). Defendants' counsel thereupon filed the deed for record with the Clerk of Court. This suit to annul it followed.

In rejecting the demands of plaintiff the district judge, in his well considered written reasons for judgment, observed:

"As heretofore stated, the compromise proposal was drafted by counsel for the plaintiff. It was then accepted by the defendants and they signified their acceptance in writing on the bottom of the compromise proposal, which had been submitted to them by counsel for the plaintiff. The testimony shows that this proposal of compromise was submitted on September 4, 1948, and accepted two days later or September 6, 1948. In accordance with an agreement between the attorneys for the plaintiff and the defendants, the defendants' attorneys prepared the compromise agreement in accordance with the compromise proposal. It was not until November 6, 1948, or two full months after the compromise proposal was accepted, that the com-

promise agreement was actually signed by the parties.

"A reading of this compromise agreement shows that the defendants, Sedgie Rouse and Lucy Rouse Allgood, transferred to the plaintiff (Thelma Stroble Rouse) 'an undivided 5/16ths of the vendors' combined interest' in and to the separate estate left by the deceased John E. Rouse.

"It is urged by counsel for the plaintiff that it was their understanding that the plaintiff was to receive 5/16th of the separate estate of John E. Rouse. The proposal of compromise shows that the defendants own 6/16ths and that the combined interest of the two defendants in the separate estate of John E. Rouse comprised only 6/16ths of said estate. Thus, by following the plain language of the compromise agreement, the plaintiff could only receive 5/16ths of 6/16ths of the separate estate of John E Rouse because that constituted the combined interest of· the defendants in said separate estate. To my mind, the language of said compromise agreement is plain and unambiguous and, this being so, it is indeed a dangerous policy for this court to go behind said language in an attempt to ascertain what might have been the intention of the parties.

"A compromise is defined by Article 3071 of the Revised Civil Code as an agreement between two or more persons who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent in the manner in which they agree on, and Article 3078 of the Revised Civil Code provides that compromises have between the interested parties a force equal to the authority of things adjudged. It must be remembered that the plaintiff herein was represented by able counsel who not only submitted the compromise proposal but that they had a period of two months to study it after the said compromise proposal was accepted by the defendants. After this time elapsed, one of the attorneys for the plaintiff even witnessed her signature to the compromise agreement. While it might be true that neither the plaintiff nor her attorneys intended to compromise the matter unless the plaintiff received 5/16ths of the separate estate of John E. Rouse, that is not the compromise agreement which they permitted their client to sign and which one of them actually witnessed because under said compromise agreement the language is clear and unambiguous and to the effect that the plaintiff receives only 5/16ths of the defendants' combined interest in and to the separate estate of John E. Rouse. Since the compromise proposal shows that the defendants' interest in the estate of John E. Rouse is 6/16ths of said separate estate, then it is clear under said compromise that the plaintiff receives only 5/16ths of 6/16ths of the separate estate of John E. Rouse.

"I appreciate the fact that there has been much litigation in connection with this succession, and I further appreciate

the fact that there has been much heated argument on the part of the attorneys on respective sides in said litigation. I am further cognizant that the attorneys for this plaintiff might have permitted her to have entered into this compromise in the belief that she was to receive 5/16ths of the separate estate of John E. Rouse. However, it is impossible for me to look behind said compromise, the language of which to my mind is clear and unambiguous, and attempt to ferret out what might have been the belief in the minds of the attorneys for the plaintiff. The language in said compromise agreement can have only one meaning and that is that the plaintiff receives 5/16ths of 6/16ths of the separate estate of John E. Rouse. Since no error has been proven by the plaintiff in said compromise agreement it has the authority of a thing adjudged, and this court is powerless to declare it null and void."

We are unable to disagree with the conclusion of the trial judge. Authority for attacking an executed agreement of compromise or transaction (as it is sometimes termed) is provided by our Civil Code, the articles thereof appropriate to this consideration being:

Article 3078. "Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."

Article 3079. "A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence."

In the confection of the instant transaction plaintiff charges the commission by defendants of neither fraud nor violence; and clearly there was no error in the person. But did there exist an error in calculation or an error on the matter in dispute? We think not. The parties well knew that in effecting the settlement they were dealing only and exclusively with the interests of defendants in and to decedent's separate estate; and they, particularly the respective competent counsel, were fully aware that those interests totaled six-sixteenths, all as is disclosed by the submitted and agreed to proposal. Possessing this knowledge defendants executed and plaintiff accepted the conveyance, by means of an authentic act and couched in clear and unambiguous language, of "an undivided five-sixteenths of vendors' combined interests in and to John E. Rouse's separate estate."

In this connection it is well to point out that the written proposal of compromise, drafted and submitted by competent counsel for plaintiff, did not purport to represent any prior agreement or understanding. Rather, from the evidence, it appears to have been entirely independent of the previous unsuccessful negotiations carried on

between counsel in an effort to reach a settlement. And it was this independent proposal which defendants accepted, resulting in the conveyance ultimately evidenced by the assailed notarial act. Surely, a compromise agreement thus confected and containing no ambiguities cannot be annulled on the theory that it was contrary to the intention of plaintiff and her attorneys.

But counsel for plaintiff urge further that the deed is a nullity because of a breach by defense counsel of an understanding had with them to file it for record simultaneously with the obtaining of a judgment sending the heirs into possession (it was filed prior thereto). The record does tend to show that such an understanding between counsel existed. But it does not disclose that the joint performance of those acts was a condition precedent to the validity of the compromise agreement; nor does the original proposal or the subsequently executed deed contain a stipulation to that effect. From the evidence it appears that the attorneys decided upon such course, after the submission of the proposal and the acceptance thereof, only for the purpose of convenience and to facilitate the handling of the numerous details attending the several matters involved. It, in other words, was simply the means chosen for winding up the entire succession, including the litigated dispute, at one and the same time; it had nothing to do with the binding effect of the con-

summated compromise agreement. Undoubtedly, the understanding would have been complied with fully had not plaintiff repudiated the compromise, for defense counsel, evidently acting for the protection of their clients, placed the deed of record only after having been notified of its repudiation or six days following its execution. A breach of the discussed understanding, therefore, had no effect on the compromise's validity.

For the reasons assigned the petition of intervention of Lillian Mailhos Rouse is dismissed as of non-suit at her costs. Further, the judgment appealed from is affirmed at the costs of appellant.

HAWTHORNE, J., takes no part.