ROGERS, Justice.
 

 Duplain Rhodes, Jr., sued Louida Hunt Miller for the annulment of their marriage. Defendant filed an exception of no cause or right of action, which was overruled. She filed no answer, and plaintiff obtained a judgment' by default. Defendant appealed devolutively, the delay for appealing suspensively having elapsed.
 

 Plaintiff alleged that he was married to Leah Robin in the city of New Orleans, where they resided. That while married to Leah Robin, he lived for several years in open adultery with Louida Hunt Miller. That Leah Robin sued for and obtained a judgment of divorce on the ground of his adultery with Louida Hunt Miller, who was specifically named in the suit. That shortly after the judgment of divorce was rendered, plaintiff and Louida Hunt Miller were married in Chicago, where they went for the purpose of evading the provisions of article 161 of the Civil Code prohibiting the guilty party in case of divorce on account of adultery from marrying his or her accomplice in adultery, under penalty or nullity of the new
 
 *293
 
 marriage, and that after their marriage they returned to New Orleans.
 

 Plaintiff alleged that his marriage to Louida Hunt Miller was not a legal marriage, for the reason that it was contracted in violation of a prohibitory law of this state. Hence, plaintiff prayed for a judgment decreeing his marriage with defendant to be null and void and of no effect whatever. Plaintiff also prayed for all general and equitable relief.
 

 Defendant contends that ■ plaintiff has no standing in court to obtain the annulment of their marriage for the reason that his action is not sanctioned by any statutory authority. As a further bar to plaintiff’s suit, defendant invokes the rule of law that courts will not hear a litigant who alleges his own turpitude and the rule of equity that courts will not relieve a litigant who appeals for relief with unclean hands.
 

 Defendant argues that a suit to annul a marriage is a special form of proceeding established by law, and that the only causes authorizing the proceeding and the persons entitled to avail themselves thereof are specified in articles 110 to 118, inclusive, of the Civil Code. And defendant cites Ryals v. Ryals, 130 La. 244, 57 So. 904, 905, as holding that the causes for annulling marriages specified in the codal articles are exclusive.
 

 In Ryals v. Ryals, supra, the plaintiff’s wife sued for the annulment of her marriage on the ground that her husband had become insane and had been interdicted therefor and incarcerated in the state asylum. The judgment of the district court dismissing the suit on an exception of no cause of action was sustained by this court for the reason that: “The grounds upon which marriages may be annulled are specified in the Civil Code, and do not include that upon which plaintiff relies.”
 

 That decision is clearly correct. Nowhere in the Code is it provided that a marriage shall be void or voidable by reason of the subsequent insanity of one of the spouses. But a different situation is presented in this case. Here the suit for annulment of the marriage is founded on a cause which is specified in the Code. Article 161 declares: “In case of divorce, on account of adultery, the guilty party can never contract matrimony with his or her accomplice in adultery, under the penalty of being considered and prosecuted as guilty of the crime of bigamy, and under the penalty of nullity of the new marriage.”
 

 The Codal article being subject only to the qualification that the name or the identity of the accomplice in adultery appears in the record or in the evidence. Succession of Knupfer, 174 La. 1048, 142 So. 609. This is such a case.
 

 A bigamous marriage is an absolute nullity and may be impeached by either of the contracting parties or by any other party in interest. Civ.Code, arts. 93 and 113. Monnier v. Contejean, 45 La.Ann. 419, 12 So. 623.
 

 We see no reason why the same rule should not apply to the marriage of
 
 *295
 
 a divorced party with his accomplice in the adultery, which is in the nature of a bigamous marriage, and is also an absolute nullity. Civ.Code, art. 161.
 

 The article of the Code creates a substantive right which would be wholly useless without a judicial remedy for its enforcement or protection. To deny the remedy would destroy the right.
 

 A person having a legal' right needing judicial enforcement or judicial protection is generally entitled to a legal remedy adequate to the situation, since right and remedy are reciprocal, and to deny the remedy is to destroy the right. Siegel v. Helis, 186 La. 506, 172 La. 768.
 

 This brings us to the consideration of the other question raised by defendant, viz., has plaintiff by his own wrongful conduct debarred himself from any hearing in the courts ?
 

 The courts recognize the doctrine that no one alleging his own turpitude is to be heard as the basis of an estoppel which bars a party from availing himself of his own wrong as the foundation for his demand.
 

 But the courts also recognize the doctrine that estoppel cannot be invoked to impair the force and effect of a prohibitory law. Factors’ & Traders’ Insurance Company v. New Harbor Protection Company, 37 La.Ann. 233, 236; Succession of Jacobs, 104 La. 447, 29 So. 241; Ackerman v. Larner, 116 La. 101, 40 So. 581, 586; Louisiana Ry. & Navigation Co. v. Holly, 127 La. 615, 53 So. 882.
 

 In the case of Ackerman v. Larner, supra, a donation omnium bonorum was sought to be made effective by estoppel. In holding that this could not be done, this court said:
 

 “Estoppel, as predicated upon the maxim ‘nemo allegans suam turpitudinem audiendus est,’ it may be said, is a doctrine which forms part of the policy of the law by reason of its recognition by the courts, but, as the law itself is the paramount authority as to its policy, it follows that in those matters concerning which it speaks definitely, it cannot be controlled by an estoppel, which is but the creature of its creature. The law of the state and the policy of the law as to the question here at issue are declared, at one and the same time, as follows, to wit:
 

 “ ‘The donation shall, in no case, divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole.’ Civ.Code, art. 1497.
 

 “Construing this article, our predecessors in this court have said: * * *
 

 “ ‘That the nullity pronounced * * * is based upon motives of public order, and that the act done in contravention of its prohibition is against good morals, can hardly be doubted, and will be easily understood.’ Lagrange v. Barré et al., 11 Rob. 302.
 

 “To hold, then, that in spite of the law as thus construed, a donation made in violation of its prohibitory and mandatory directions must be maintained, because made to accomplish an illegal purpose of
 
 *297
 
 the donor, would be to subordinate the law and the public policy of the state, as definitely declared by the lawmaking power, to the will, or infirmity, of the citizen.”
 

 The courts recognize the .rule that every suitor who seeks relief at their hands must himself be free from any unlawful or inequitable conduct with respect to the matter or transaction in question. This rule is known in equity as the rule of “clean hands.”
 

 The court must apply the rule not because it is a matter of defense, but because it is against public policy to hear the case if the unconscionable character of the matter or transaction be established. The court acts for its own protection rather than for the protection of the defendant.
 

 The rule, however, has its limitations. Being one founded on public policy, public policy may require its relaxation. Even when the parties have been found to be in pari delicto, relief has at times been awarded on the ground that in the particular case public policy has been found to be best conserved by that course. 21 C.J., § 175, p. 189, Equity.
 

 In such a case the guilt of the parties is not considered as equal to the higher right of the public; and the guilty party to whom the relief is granted is simply the instrument by which the public is served. 13 C.J., § 441, p. 497, Contracts.
 

 The prohibition contained in article 161 of the Civil Code is one eminently affecting the public order. A marriage contracted in violation of the prohibition contravenes the policy of the law, is an absolute nullity, and is open to attack as such. Succession of Minvielle, 15 La.Ann. 342; Summerlin v. Livingston, 15 La.Ann. 519; McCaffrey v. Benson, 38 La.Ann. 198; Succession of Gabisso, 119 La. 704, 44 So. 438, 11 L.R.A.,N.S., 1082, 121 Am.St.Rep. 529, 12 Ann.Cas. 574.
 

 By statute in Illinois, Ill.Rev.Stat.1937, c. 89, § 1, the marriage of first cousins i.s prohibited and’ declared to be null. In Arado v. Arado, 281 Ill. 123, 117 N.E. 816, 818, 4 A.L.R. 28, the rule of “unclean hands” was held to be inapplicable to the defendant in a divorce suit who filed a cross-bill, alleging the nullity of the marriage by reason of the parties being first cousins.
 

 The Supreme Court of Illinois in discussing the rule, said:
 

 “Aside from a construction of the statute, no estoppel could arise as against a disaffirmance of an illegal marriage. There was no such estoppel under the rule of the common law. * * * The general rule that equity will not entertain the complaint of one who comes into the court with unclean hands does not apply, and if a party to an illegal marriage is so wanting in honor as to be willing to publish
 
 j
 
 his own criminal offense and disgrace and • humiliate his children and one with whom he has lived in the marital relation, the public interest requires that he should not
 
 *299
 
 be prevented from doing so. The defendant was not barred from alleging the illegality of the"marriage.”
 

 In Monnier v. Contejean, 45 La.Ann. 419, 12 So. 623, the plaintiff sued for the nullity of her marriage to the defendant on the ground of defendant’s subsisting prior marriage. Defendant admitted his prior undissolved marriage and alleged that plaintiff was fully cognizant thereof before and at the time of her marriage to him. Defendant prayed in reconvention for the nullity of the marriage.
 

 The district court maintained the re-conventional demand and gave defendant judgment, annulling the marriage. On appeal, .this court found that at and before the date of her marriage with defendant, plaintiff was fully cognizant of the fact that defendant was already lawfully married to another. Nevertheless, the court, reversing the judgment of the district court, and gave plaintiff judgment, annulling the marriage, but decreeing that the marriage produced no civil effects.
 

 In that'case, the court did not because of plaintiff’s bad faith refuse her relief against her illegal marriage, although it did deny her the benefits flowing from her wrongful act.
 

 Although marriage is declared to be a civil contract, the contract itself creates a social status or personal relation which affects not only the contracting parties, but also their posterity and the good order of society. The status or relation thus created has always been subject to legislative control, independent of the will of the parties. Civ.Code, arts. 86 and 90; Hurry v. Hurry, 144 La. 877, 81 So. 378; Zwikel v. Zwikel, 154 La. 532, 97 So. 850; Stallings v. Stallings, 177 La. 488, 148 So. 687; Cormier v. Cormier, 185 La. 968, 171 So. 93.
 

 The state is not only deeply concerned in -preserving the integrity of a valid marriage, but it is also deeply concerned in abating the iniquity of an invalid marriage.
 

 The marriage here attacked, being an absolute nullity in contravention of public policy and good morals, it is in the public interest that it be vacated. It would be against all reason to maintain the parties in a relation or status which the law forbids. The public interest will be better served by granting the relief herein sought, even though it be applied for by the guilty party, than by withholding it. In so doing, the court is not acting for the sake of the party, but for the public good.
 

 Notwithstanding plaintiff’s conduct in marrying defendant was highly immoral and reprehensible, the estoppels urged by defendant cannot avail her to bar his action.
 

 The marriage of a divorced party with his accomplice in adultery being invalid, there can be no estoppel against the right to allege its invalidity.
 

 The object of a prohibitory law cannot be defeated by estoppel nor the legally impossible accomplished. Factors’ & Traders’ Insurance Company v. New Harbor Protection Company, 37 La.Ann.
 
 *301
 
 233, 236; Succession of Jacobs, 104 La. 447, 29 So. 241; Ackerman v. Larner, 116 La. 101, 115, 40 So. 581; Majors v. Allen Mfg. Co., 144 La. 314, 80 So. 549.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., dissents.