192 So.2d 594 (1966)
Etta Florence P. CLARK, Plaintiff-Appellee,
v.
Morris Marcus CLARK, Defendant-Appellant.
No. 1849.
Court of Appeal of Louisiana, Third Circuit.
December 1, 1966.
Rehearing Denied December 21, 1966.
*595 Rogers, McHale & St. Romain, by Robert M. McHale, Lake Charles, for defendant-appellant.
Grenese R. Jackson, Jennings, for plaintiff-appellee.
Before TATE, FRUGÉ and HOOD, JJ.
FRUGÉ, Judge.
The plaintiff, judicially separated from her husband, brought an action against him in district court seeking a declaratory judgment decreeing certain real estate located in the Parish of Jefferson Davis to be the separate and paraphernal property of the *596 said Mrs. Clark. The defendant husband answered the suit claiming that the property belonged to the community of acquets and gains which existed between the plaintiff and defendant at the time the property was purchased. The district judge found that the property was the separate property of the wife and rendered a declaratory judgment to that effect. From this adverse judgment the defendant husband has appealed.
Prior to June 18, 1958, the plaintiff and defendant herein were each married to different persons, the plaintiff to Henry Dewey Taylor, and the defendant to Bertile Roy Clark.
The plaintiff and her former husband were residents of and domiciled in Lake Arthur, Louisiana, while the defendant's former wife was a resident of Calcasieu Parish.
On or about June 18, 1958, the plaintiff and the defendant traveled to Neuvo Laredo, Mexico, for the purpose of obtaining divorces from their former spouses and thereafter marrying each other. The divorces were applied for one day and obtained the next, and the parties were married within an hour after their respective divorces were granted. The next day the plaintiff and defendant returned to Lake Arthur, Louisiana, where they lived as man and wife for a period of several years.
Evidently suspecting that their Mexican divorces were invalid, the plaintiff obtained a second divorce from her former husband, Henry Dewey Taylor, in Louisiana on March 5, 1959. On November 17 of that same year, the defendant obtained a Louisiana divorce from his former wife, Bertile Roy Clark. In July of 1963, approximately three years after the parties had obtained Louisiana divorces from their respective spouses, plaintiff and defendant were again married to each other in Welsh, Louisiana.
The property in question was purchased in 1959, after the parties returned from their trip to Mexico but before they celebrated the second marriage between them in Welsh, Louisiana, in 1963. The deed of acquisition contained a declaration that although the plaintiff was married to and residing with the defendant, she was acquiring the property with her separate and paraphernal funds, the property to be placed under her separate administration. The plaintiff admitted and the trial court found that she had no separate and paraphernal funds at the time of the purchase and that in fact most of the consideration paid belonged to the separate estate of the defendant, being the proceeds of the sale of his mobile home which was acquired prior to his marriage to the plaintiff.
The issues presented on appeal to this court are: (1) whether the Mexican divorces procured by plaintiff and defendant from their respective spouses are valid, thus validating the marriage ceremony performed in Mexico that same day, and (2), if the answer to (1) be in the negative, whether the parties entered that marriage in good faith so that a putative community existed between them under the provisions of Civil Code Articles 117 and 118[1].
At the outset, the defendant argues strenuously that the plaintiff should not be allowed to introduce any evidence of the illegality of the Mexican divorces or marriage since the plaintiff was herself a party to those proceedings and, having lived together with the defendant for a period of several years as man and wife, is estopped from attacking the validity of their marriage.
*597 We find no merit in the defendant's contention on this point, for a marriage between persons already legally married is prohibited by law and the doctrine of estoppel cannot be urged to impair the force and effect of a prohibitory provision of law. La.Rev.Civil Code Art. 93; Rhodes v. Miller, 189 La. 288, 179 So. 430, 440 (1938). In addition, a marriage which is invalid because one of the contracting parties was legally married at the time of its confection is an absolute nullity and may be impeached by either of the parties to the marriage or by any other party in interest. La.Rev.Civil Code Arts. 93, 113; Monnier v. Contejean, 45 La.Ann. 419, 12 So. 623; Rhodes v. Miller, supra; Burrell v. Burrell, 154 So.2d 103 (La.App. 1st Cir. 1963). We are aware of the pronouncements of our Supreme Court in the case of Rouse v. Rouse, 219 La. 1065, 55 So.2d 246 (1951), but feel that the holding of that case was limited strictly to the facts there presented by the Supreme Court in the later case of Eaton v. Eaton, 227 La. 992, 81 So.2d 371 (1955). Since the facts of the Rouse case are clearly distinguishable from the facts at bar, the defendant's plea of estoppel and objections to the evidence of the proceedings in Mexico must be overruled.
Turning to the question of the legality vel non of the divorces and marriage of the parties in Mexico, we are unable to find a single Louisiana case dealing with a divorce granted in a foreign country. However, the courts of this state have repeatedly refused to recognize divorces obtained in sister states when the parties to the divorce have not established a bona fide domicile in that state. Finn v. Employers' Liability Assurance Corp., 141 So.2d 852 (La.App. 2d Cir. 1962); Walker v. Walker, 157 So.2d 476 (La.App. 3d Cir. 1963); Turpin v. Turpin, 175 So.2d 357 (La.App. 2d Cir. 1965); Juneau v. Juneau, 227 La. 921, 80 So.2d 864 (1955); Boudreaux v. Welch, 180 So.2d 725 (La.App. 1st Cir. 1965).
Since the courts of Louisiana are not required by the full faith and credit clause of the Federal Constitution to give any recognition to divorces obtained in foreign countries, then it must follow, a fortiori, that divorces obtained in foreign countries which do not meet the standards recognized between Louisiana and her sister states are illegal and without effect. From even a cursory examination of the facts in this case it is obvious that if Mr. and Mrs. Clark had gone to one of our sister states and had obtained divorces from their former spouses in the same manner as was done in Mexico, those divorces would not be entitled to full faith and credit in a Louisiana court under the above cited cases.
Under the universally acknowledged principle that the judicial power to grant a divorce is founded on domicile, and because the plaintiff and defendant admittedly went to Mexico for the sole purpose of obtaining their respective divorces, we hold that the divorces thus obtained were patently invalid and of no effect whatsoever.[2]
Under the provisions of Civil Code Art. 93, persons legally married are, until a dissolution of the marriage, incapable of contracting another. Therefore, unless the marriage between the plaintiff and defendant herein was contracted in good faith, no community of acquets and gains existed between the parties at the time the property in question was purchased.
Counsel for defendant contends that the testimony of the defendant establishes that Mr. Clark honestly believed at the time that his Mexican divorce and marriage to Mrs. Clark was valid and legal. *598 Even if this were true,[3] the jurisprudence of this state requires not only an honest belief, but a reasonable belief in order to invoke the doctrine of putative marriage. Succession of Pigg, 228 La. 799, 84 So.2d 196 (1955), Succession of Primus, 131 So.2d 319 (La.App. 1st Cir. 1961); Succession of Hopkins, 114 So.2d 742 (La.App. 1 Cir. 1959) and authorities cited therein.
The entire transaction, the three day trip to secure the divorces, the lack of any attempt at notification of the parties' former spouses, and the fact that the parties themselves secured later Louisiana divorces from their same respective spouses, leads us inescapably to the conclusion that the parties to this marriage did not possess the good faith which the law of this state demands in order to produce the civil effects of an otherwise invalid marriage. The trial judge specifically found that both parties were in bad faith and we agree wholeheartedly with his determination. Hence, the property must fall into the separate estate of the plaintiff herein, for there was neither actual nor putative community in existence at the time the property was purchased.
The alternative contention of the defendant, that he is entitled to a one-half interest in the property because the parties had pooled their resources and were engaged in a partnership or joint venture, must also fall because when such associations are formed for the purchase of real estate, the agreement must be in writing. La.Rev.Civil Code Art. 2836; Pique v. Ingolia, 162 So.2d 146 (La.App. 4th Cir. 1964), writ denied June 8, 1964, and authorities cited therein.
Further in the alternative, defendant prays that if this court finds the property to be the separate property of the plaintiff, then we render judgment granting defendant the $3,400.00 which he advanced toward the purchase price of the property. Since the answer of the defendant in the lower court contains no such plea for reimbursement and the claim is made for the first time on the appellate level, we deny his request, reserving, however, his right to assert any claim which he might have in a separate action for reimbursement.
Despite the defendant's contention to the contrary, the lower court's assessment of costs against him was proper under the general rule that the party cast shall pay the costs of trial. Louisiana Code of Civil Procedure Arts. 1920, 2164; see also Comment 1 under Art. 1872; Mire v. Hawkins, 177 So.2d 795 (La.App. 3d Cir., 1965).
For the foregoing reasons, the judgment of the district court declaring the property to be the separate property of the plaintiff is affirmed, all costs to be borne by the defendant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] Art. 117. "The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."

Art. 118. "If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."
[2] See Annotations at 28 A.L.R.2d 1303 for a discussion of similar decisions in other jurisdictions.
[3] When questioned about the legality of the Mexican divorce, defendant testified thus:

"Q Now did you subsequent to that time divorce your wife in Louisiana?
A Afterwards, yes, sir.
Q After this Mexican divorce?
A On account of a lot of property she and I had. More so on a matter of property settlements.
Q In other words, you considered the divorce you had invalid divorce so you got another one, is that correct, sir:
A No, sir. That would be on the thought that the Mexican divorce was strictly legal except on the propertycommunity property that me and my ex-wife had.
Q In other words, you felt like your Mexican divorce and Mexican marriage was legal to some extent and illegal so far as property was concerned, is that right, sir?
A To the property that we had accumulated while she and I were married, yes, sir."